Our next case for argument is Wedemeyer v. CSX Transportation. Mr. Hager. Thank you, R. May it please the Court, the main topic of the briefing and rulings below have involved a particular lawsuit by many owners of land in the central counties of... Counsel, could you raise your voice a bit? The microphones don't do much to amplify and there's an awful lot of fan noise from up there. I'll try. The case involves essentially a declaratory judgment in the Hendrick Circuit Court back in 94, 93, 94, which resulted in a declaratory judgment entered into by CSX and by the class of landowners to sort out the ownership and the right to possession of the various areas of an abandoned right-of-way in central Indiana. The right-of-way was from Indianapolis to Rochedale and involved three counties. The ownership of the underlying properties was sometimes in landowners, sometimes the railroad had actually purchased a fee title to land, so it was spotty. The declaratory judgment resolved that any corridor located on a piece of property which was less than a fee ownership of the railroad was the property of the underlying owner. And that was resolved with a contract, I refer to it as a contract, a stipulated judgment in the declaratory judgment action. And that stipulation... Counsel, it really isn't necessary to repeat all the facts. Okay. Your time is short. Okay. Let me ask you my principle question. Sure. Have you asked the Surface Transportation Board to direct CSX to stop service and remove the tracks? We have not. Our assumption, not assumption, our position is this was all over in 1989 before the Service Transportation Board was even created. When it was created is not the dispositive question, right? But the district court says that you lose because federal law rather than state law controls, and the Surface Transportation Board is the responsible agency to determine where there can be rail service. So one would think the logical thing to do is go to the Service Transportation Board and make there the arguments that you are now making. I'm just surprised that you haven't done it. As I say, our approach has been to treat this as a done deal with ownership fully returned, fully vested again in the owner of this particular track at the time that the ownership documentation was filed and completed. Of course, the abandonment of the line took place earlier. The reason this is important to my client is that this is the only piece of this whole line that never got just ripped up and thrown away like the rest of it because although the statutory judgment called for it to be and called for it to be returned to the owner, possession returned to the owner, they just didn't do it. And so from our perspective, they are holding over. They used to have a right to have a right-of-way there. They don't anymore and haven't. And so the owner then is concerned with the threat of utilization of this particular, this is a half-mile track. It's only half-mile, this whole 23 miles or whatever that didn't just get rolled up for the rest of it. And it is right next to the property, the home of Wiedemeyer's. There's been a threat of utilizing it for hazardous waste when that was originally the thought was that would be done by the elevator company. Wiedemeyer's sought zoning protection and were told that zoning didn't matter, that the railroad could do it if they wanted to. No zoning could stop the railroad from putting hazardous waste on it. So why isn't this preempted? Pardon? Just to kind of cut to the chase, why isn't this preempted? Because of the contract. Why isn't this an attempt to use state law to regulate rail transportation? It's not state law because the railroad agreed to give this back. The declaratory judgment says in it the owner in my client's situation has title superior to anything of CSX or anyone else except some communications if they're there. Right, that's just a declaration of title order. There's still an easement in favor of the railroad. And so this does seem to fall squarely within the preemption clause that prohibits the use of state law, including state law causes of action, whether statutory or at common law, to regulate rail transportation. You're trying to extinguish the easement and get an order from a state court to remove the track and remove all rail activity in this stretch of line. But it's rail activity that has been surrendered by CSX in the declaratory judgment, which is an agreed contractual undertaking that gave it back. They're holding over something they gave back and contracted to give back. We provided consideration for that. That's a done deal and they've been holding over. And the Chicago case, the CTX case, indicates in some of the other cases that the imposition or the assumption of control by contractual means, by means of a contract, to take back the area or the control of the line is not subject to the preemption clause. A private or a contractual means can be utilized to reassume control. That's what we believe the law is. Is that, in fact, what the consent decree said? I'm sorry? Is that, in fact, what the consent decree said, that the railroad was giving up its easement? The consent decree said... Or did it just declare that the property owners had fee simple? It said it had title superior to any claims, and that includes the claims to maintain a right-of-way. Well, that's just a declaration of superiority of title. That's not an extinguishment of the easement. Well, it goes on to reference who can be in the right-of-way, and it references subject to the prior adjudication, which has not happened, and subject to existing occupation of the right-of-way by communications or other institutions or companies that the railway may have granted some power to while they had the right-of-way. I view the language to be actually that CSX has given up its right-of-way. Any claims include the claim to the right of access, the right of usage. Do you want to reserve some time, Mr. Edge? Thank you. Mr. Billick? Good morning, Your Honor. May it please the Court, Eric Billick for FLE CSX Transportation, Inc. Mr. Ayers and the Weddemeyer's appellants brought a state court action that was removed to this court under diversity jurisdiction, and they asserted state law claims and remedies seeking to prevent, evict, and oust CSX from conducting rail transportation and railroad operations on this rail line at issue. It clearly constitutes the regulation of rail transportation under any definition. As the Court has recognized, Mr. Ayers' clients, they did not even go back. We're going to talk about the Clark judgment. They didn't go back to Hamilton County where the Clark case was actually resolved, which dealt with superiority of title and reversionary interests for abandoned railroad corridors. That means when rail operations had ceased. Here it is undisputed that Weddemeyer's have admitted, and their predecessors, their family members that owned the property before, that CSX has been operating on this property for over a century. The Weddemeyer's have been there since 1966. This comes all the way forward. The entire time, both before, during, and after the Clark lawsuit in Hamilton County, the rail line at issue here in front of the Weddemeyer's property has been continuously used for rail transportation. As Mr. Ayers conceded a moment ago, other portions of the CSX rail line that were abandoned for mainline purpose, not for this auxiliary track service, were pulled up and ripped out. For those properties, if you had an underlying reversionary interest and owned the property in fee, and the railroad has ceased all rail operations, then the property reverts to you. That's what Clark addressed. Here, there is no dispute. The facts are uncontroverted. In fact, in the record below, there was not even a contested statement of facts from the appellant. So the district court got it exactly right. Congress enacted ICTA effective January 1st, 1996. It granted the Surface Transportation Board with exclusive jurisdiction and also provided for express preemption, which this court said in the Union Pacific Chicago Transit Authority case was broad and sweeping and defined regulation as something that would prevent or unreasonably interfere with rail transportation. This is not a gray area. This is not a degree of interference. This is wholesale prevention. This is the relief requested in the state law claims. This was not an action to enforce something to do with the Clark judgment in Hamilton County. This was an action filed in state court in Putnam County for a complaint to quiet title, for trespass, for ejectment, and for preliminary injunction. The relief requested is CSX, I think this is my property. You need to rip up your ties, rip up your track and your ballast. Stop serving the grain shipper you've been serving using these tracks since 1990 at least. Rip it up, tear it out, and just stop and give it back. That is quintessential regulation under the abundant case law that we've cited in our briefs that make this a clear-cut case of federal preemption under the ICCTA. There's also alternative state law grounds, which we don't need to reach, but which also abundantly demonstrate that the Wedemeyers, by their own admissions and in his accommodation to the grain shipper located nearby, even after their purported claim arose in 2003, they let the rail line stay there. They didn't take any action with the STB or with the Hamilton County Court or anyone else to do anything. They let these tracks sit there knowing they were being used for rail transportations and railroad operations. The Clark judgment, as I've said, does not negate ICCTA preemption. It's really irrelevant to ICCTA preemption here. Congress vested the Surface Transportation Board with exclusive jurisdiction here. There's no dispute this is rail transportation. There's no dispute it's ongoing. There's no dispute that these are state law remedies that the Wedemeyers seek to invoke to essentially halt rail transportation. That is solely within the purview of the Surface Transportation Board and the federal courts and the district court got it exactly right. Judge Easterbrook mentioned the Surface Transportation Board. Many of the decisions we cite in our brief are decisions of the Surface Transportation Board, which this court numerous times has recognized are entitled to some degree of agency deference. Back in 1999, there were two union transportation cases versus the STB where the Seventh Circuit was addressing issues. So there's clearly an avenue they could have pursued. They didn't. The STB can issue declaratory orders if there's a dispute. They didn't take that route. They used state law remedies of quiet title and ejectment and trespass and permanent injunction to seek to fully divest CSX if it's ongoing railroad operations. So I think the record is clear and undisputed. CSX did not abandon this track. I would like to address just a few points that Mr. Ayers said, and he's a zealous advocate for his client. There is no evidence in the record of any hazardous substances. We dropped a footnote to that. There's this claim now that in 2013 there was some specter of hazardous substance. There's no evidence in the record of that below, and it was sort of thrown out there and alleged, but there was never any evidence of it. This is a grain shipper. It's a grain silo just east of Rochedale, Indiana. CSX, between 2001 and 2014, when we submitted the records into evidence for the district court, they were shipping about 1,000 carloads a year. So they bring in empty railcars, and they haul out about 1,000 railcars full of grain a year. That's what this track is used for. And the track that's adjacent to the Weddemeyers property is part of the operations and the switching and storage for that grain facility. And CSX has all rights to use that track. It's leased to the grain shipper, but it is an active rail transportation facility today. So there's also Mr. Ayers made some reference to his clients gave consideration to CSX. As evidenced in the record, CSX has had an instrument of appropriation and a deed of right of way on these parcels since 1876 and 1879. And CSX has continuously, or its predecessors, has continuously used this property for rail transportation activities. This case is clearly preempted under all of the precedent we've cited. I won't belabor it. And under any formulation of active preemption, this is not a breach of contract claim. They didn't bring a breach of contract claim. I don't think they could, but they didn't. They didn't go to the STB. They brought state law claims in Putnam County that we removed that are quintessentially and absolutely and categorically preempted by Section 10501B of the Interstate Commerce Commission Termination Act. We would respectfully request that the court affirm the district court either on ICTA or on the alternative grounds of statute of limitations, laches, or acquiescence. Thank you for your time. Mr. Ayers. Thank you. Until the red light comes on. Pardon? Until the red light comes on. Okay, got you. First, let me just briefly comment on the alternative bases. There's nothing in the activities of the Wiedemeyers that have caused CSX to extend itself to make its position any worse, to make it take any protective measures. So there is no basis for estoppel or any of those arguments. There's also no basis for saying that they've been at it for almost ten years and, therefore, they can almost claim adverse possession. What has happened here back when Wiedemeyer's predecessor and interest is Kit's stepfather, executed the documentation to take in his mind and in everyone else's complete control and possession of that property. He assumed the taxes and has paid the taxes since. And, of course, that to my client and to us seems to be particularly telling because CSX has now leased that property to someone. They're taking in thousands of dollars a year on that property. And they don't pay tax on it like they should because my client's paying the tax. And we believe that all that was resolved back in 1992 in the Hendricks County case. Thank you, Mr. Harris. Thanks to all counsel. The case is taken under advisement. The court will proceed to the next case, the United States v. Congress.